UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
CHRISTOPHER KANE,

                            Plaintiff,

     - against -                                  **OPINION & ORDER**

MOUNT PLEASANT CENTRAL SCHOOL          No. 20-CV-7936 (CS)
DISTRICT, SUSAN GUINEY, FRANK
VITERITTI, BRUCE FERGUSON, NICOLE
SCHIMPF, and RICHARD HENNESSEY,

                            Defendants.
-------------------------------------------------------------x

Appearances:

Kevin T. Mulhearn
Kevin T. Mulhearn, P.C.
Orangeburg, New York

Darren J. Epstein
Darren J. Epstein, Esq., P.C.
New City, New York
*Counsel for Plaintiff*

Trish L. Wilson
Gary J. Intoccia
McGivney, Kluger, Clark & Intoccia, PC
New York, New York
*Counsel for Defendants*

Seibel, J.

      Plaintiff brings this action against the Mount Pleasant Central School District (the

"MPCSD"), and several former school district employees: Susan Guiney, Frank Viteritti, Bruce

Ferguson, Nichole Schimpf, and Richard Hennessey (collectively, "Defendants"). Before the

Court is Defendants' motion to dismiss the Amended Complaint, (ECF No. 60 ("AC")), pursuant

to Federal Rule of Civil Procedure 12(b)(6), (ECF No. 68), and Plaintiff's cross-motion to amend

his complaint, (ECF No. 83 ("P's Opp.") at 28). For the following reasons, Defendants' motion is GRANTED and Plaintiff's motion is DENIED.

I.      **BACKGROUND**

For purposes of the motion, I accept as true the facts, but not the conclusions, set forth in Plaintiff's Amended Complaint.

A.      **Facts**

This case arises from Plaintiff's experience as a high school freshman at Westlake High School ("Westlake"), a school within the MPCSD, in 2008 and 2009. In August 2008, as an incoming freshman, Plaintiff started attending football practices with the varsity football team (the junior varsity team having been disbanded). (AC ¶¶ 46-47.) At the time, Plaintiff was thirteen years old, (*id.* ¶ 53), but as a member of the football team he was required to practice and share the locker room with students who were seventeen or eighteen years old, (*id.* ¶ 47).

Plaintiff became the target of bullying at the hands of older teammates, who "selected him to be the 'team bitch,' cruelly mocked him for his then not-yet-fully-developed sexual organs, questioned his sexual preference, and taunted and threatened him by letting him know that he should expect to receive harsh treatment from them for the rest of the 2008 football season." (*Id.* ¶ 54.) Similar taunting and verbal abuse continued throughout the football season. (*Id.* ¶¶ 55, 60, 62, 89, 92.) Plaintiff was forced to do tasks such as cleaning up after the team ate lunch in the locker room and scrubbing the toilets used by the team. (*Id.* ¶ 64.)

Plaintiff was also physically bullied by an older teammate who was gratuitously rough with Plaintiff during practices, including by grabbing his facemask and throwing him to the ground (without any arguable sport-related justification). (*Id.* ¶¶ 87, 89-91, 93.) This teammate also called Plaintiff a "pussy" or "bitch," and would frequently try to get Plaintiff to flinch by

2

indicating he was about to punch Plaintiff.  (*Id.* ¶¶ 92-93.)  On or about October 20, 2008, in response to repeated physical assaults, Plaintiff told the teammate that he would get someone who worked with Plaintiff's father to beat up and "kill" the teammate.  (*Id.* ¶ 98.)  At the time, neither this teammate nor anyone else who heard the remark reported it to the team's coaches, the school, or law enforcement.  (*Id.* ¶¶ 101-104.)

In addition to the above conduct, Plaintiff alleges that one teammate – Philip Ciccone, a 16- or 17-year-old junior, (*id.* ¶ 54) – "flash[ed]" Plaintiff "by thrusting his naked penis in close proximity to Plaintiff's face" on at least ten occasions between August and November 2008.  (*Id.* ¶ 56.)  On or about August 20 or 21, 2008, Ciccone flashed his penis at Plaintiff in the school parking lot.  (*Id.* ¶ 62.)  And on or about August 25 or 26, 2008, Ciccone "walk[ed] up to Plaintiff and plac[ed] his naked penis on Plaintiff's shoulder."  (*Id.* ¶ 78.)  Ciccone later bragged about this conduct to numerous classmates.  (*Id.* ¶¶ 84-85.)

Plaintiff alleges that at least some of these incidents were witnessed by football team coaches, who failed to intervene.  (*Id.* ¶¶ 58-59.)  As early as August 23 or 24, 2008, Plaintiff told his parents he was being harassed and hazed, without providing specifics, and his parents spoke with the head football coach, Defendant Richard Hennessey, who assured Plaintiff's parents he would "take care of it."  (*Id.* ¶¶ 65-72.)  Hennessey subsequently warned the team that he would not tolerate hazing and threatened to throw off the team any player credibly accused of hazing.  (*Id.* ¶¶ 73-74.)  But according to Plaintiff, Hennessey made no changes to prevent or mitigate hazing, took no action to discipline any individuals, and never followed up to ascertain the specific facts or identify the parties involved in the incidents about which Plaintiff complained.  (*Id.* ¶¶ 75-77.)

On January 9, 2009, Plaintiff informed his mother for the first time about the specifics of the incidents involving Ciccone, including that Ciccone placed his penis on Plaintiff's shoulder and frequently flashed him, and about the physical assaults by the other older teammate. (*Id.* ¶¶ 112-113, 116.) That same evening, Plaintiff's mother reported these allegations to the Westlake Principal, Defendant Frank Viteritti, (*id.* ¶ 118), and on January 10, 2009, Plaintiff's mother reported Ciccone's conduct to the local police, (*id.* ¶ 117). On January 12, 2009, Plaintiff's parents met with Viteritti as well as the MPCSD superintendent, Defendant Susan Guiney, to discuss the incidents. (*Id.* ¶¶ 120, 123.) Ultimately, Guiney and Viteritti directed Defendant Nicole Schimpf, the MPCSD Title IX Complaint Officer, and Defendant Bruce Ferguson, Westlake's Assistant Principal, to investigate Plaintiff's allegations. (*Id.* ¶¶ 124, 126.)

Plaintiff characterizes the school's investigation as a "sham" and alleges that the school's goals were to shield the accused older students from any real punishment and to protect the school from reputational damage and negative publicity. (*Id.* ¶¶ 127-129, 132-134.) Although Plaintiff's complaints about his treatment prompted the investigation, Defendant Ferguson, in interviewing Plaintiff, focused on the October 20, 2008 threat Plaintiff made to his older teammate, (*id.* ¶ 140), and on or about January 21, 2009, Defendants suspended Plaintiff for five days based on that incident, (*id.* ¶ 141).

On January 23, 2009, an attorney hired by Plaintiff's parents faxed the school a letter demanding, among other things, that the school revoke the suspension, and threatening legal action against the MPCSD and various employees if they did not take corrective measures. (*Id.* ¶ 148.) Plaintiff's parents ultimately entered into a stipulation of settlement with the MPCSD, and Plaintiff was reinstated. (*Id.* ¶ 150.)

In or about April 2009, Defendants concluded their investigation of Plaintiff's claims, and on April 3, 2009, Schimpf wrote a letter to Plaintiff's parents, stating that she had submitted her report to Guiney and that, while she could not share the specifics with Plaintiff or his parents, she had concluded that "student(s) were involved in inappropriate actions." (*Id.* ¶¶ 152-153.) Her letter also stated that "information about this case is of a confidential nature" and warned that "[t]o the extent that you choose to disclose information you may be in violation of federal and/or state law, including but not limited to FERPA (Family Education Rights and Privacy Act)." (*Id.* ¶ 153.) Plaintiff's counsel received a copy of this letter. (*Id.* ¶ 264.)

### B. Procedural History

More than eleven years after these events, on September 25, 2020, Plaintiff initiated this lawsuit. (ECF No. 1.) At a pre-motion conference on January 11, 2021, the Court granted Plaintiff leave to amend the complaint. (*See* Minute Entry dated Jan. 11, 2021). On February 3, 2021, Plaintiff filed the Amended Complaint, which brings claims against the MPCSD under Title IX (counts two and three); against all Defendants under the New York Human Rights Law (counts four and five); against all Defendants for intentional infliction of emotional distress (count six); and against the MPCSD for "negligent security and supervision" and "breach of duty of care" (counts seven and eight). (AC.)[1]

Defendants filed a motion to dismiss the Amended Complaint under Federal Rule of Procedure 12(b)(6) on March 17, 2021, (ECF No. 68), along with a twenty-four-page memorandum of law, (ECF No. 69 ("Ds' Br.")). In support of their motion, Defendants submitted an affidavit from Kevin Gerard Maguire, an attorney who represented the MPCSD

---

[1] Plaintiff also brought a sexual battery claim against Ciccone (count one) and named Ciccone in the intentional infliction of emotional distress claim, (AC ¶ 305), but on June 3, 2021, Plaintiff voluntarily dismissed all claims against Ciccone with prejudice, (ECF No. 88).

during the relevant timeframe.  (ECF No. 70-2.)  The affidavit annexed a copy of a Notice of Claim, dated March 25, 2009, served on Plaintiff's behalf by former counsel, and a copy of an April 23, 2009 letter from Plaintiff's former counsel to Mr. Maguire.  (ECF Nos. 70-3, 70-4.)  On the same day, Ciccone filed his own separate motion to dismiss, (ECF No. 71), and four-page memorandum of law, (ECF No. 72).  Plaintiff, without seeking leave to exceed the Court's twenty-five-page limit for memoranda of law, initially filed a fifty-page opposition brief, (ECF No. 78), which the Court struck, (ECF No. 80).  The Court granted leave for Plaintiff to re-file a brief no longer than twenty-eight pages (the combined length of the two defense briefs), (ECF No. 82), and Plaintiff filed his opposition on May 7, 2021, (P's Opp.).  As part of his opposition, Plaintiff included a limited cross-motion for permission to further amend his complaint should the Court conclude that he was required to plead that Ciccone acted for his own sexual gratification to establish that Ciccone's conduct falls within N.Y. C.P.L.R. § 214-g, the New York Child Victims Act (the "CVA").  (P's Opp. at 28.)  On June 1, 2021, Defendants filed their reply brief.  (ECF No. 84 ("Ds' Reply").)

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555 (cleaned up).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2)).

When deciding a motion to dismiss, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Incorporated Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (cleaned up).

### III.  DISCUSSION

Defendants assert that Plaintiff's Title IX claims must be dismissed as untimely.  For the reasons stated below, I agree, and I decline to exercise supplemental jurisdiction over Plaintiff's state law claims in the absence of a viable federal claim.

### A. Title IX

#### 1. Statute of Limitations

Congress provided no statute of limitations for Title IX claims, so courts "apply the most appropriate or analogous state statute of limitations." *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004) (*per curiam*) (cleaned up).[2] In *Curto*, the Second Circuit (following several other circuits) held that "Title IX claims are most closely analogous to personal injury actions" and applied the three-year general personal injury statute of limitations found in N.Y. C.P.L.R. § 214(5). *Id.* (citing *M.H.D. v. Westminster Sch.*, 172 F.3d 797, 803 (11th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728-29 (6th Cir. 1996); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 (8th Cir. 1995); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 77-78 (3d Cir. 1989)).

The three-year personal injury statute of limitations in New York does not begin to run until a plaintiff reaches the age of majority. N.Y. C.P.L.R. § 208(a); *see Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 9 (2d Cir. 2014) (summary order); *see also Boyle v. N. Salem Cent. Sch. Dist.*, No. 19-CV-8577, 2020 WL 2319116, at *3 (S.D.N.Y. May 11, 2020) ("[T]his Court looks to the state's general tolling rules for applicable tolling standards."). Here, Plaintiff was born in September 1994, (*see* AC ¶ 44), and turned eighteen in September 2012, so the three-year limitations period ran in September 2015, five years before he filed this suit.

According to Plaintiff, this is not the end of the story: he argues that the CVA revives his Title IX claims. (P's Opp. at 12-24.) New York's CVA temporarily lifts the statute-of-

---

[2] While there is a four-year federal catch-all statute of limitations under 28 U.S.C. § 1658(a), that provision only applies to claims that arise from federal statutes enacted after 1990. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). Because Title IX became law in 1972, § 1658(a) is inapplicable. *Curto*, 392 F.3d at 504.

limitations bar on "every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense" under New York law. N.Y. C.P.L.R. § 214-g.[3] Plaintiff argues that because the conduct that gives rise to his Title IX claims constitutes a sexual offense under New York law, the applicable statute of limitations is not the general personal injury statute of limitations but, instead, the exception for sexual abuse claims created by the CVA. (*See* P's Opp. at 13, 20, 24.) Plaintiff contends that *Board of Regents v. Tomanio*, 446 U.S. 478 (1980), and *Johnson v. Railway Express Agency*, 421 U.S. 454 (1975),[4] require the Court to apply all "tolling and revival rules and exceptions" that would be applicable based on the nature of the underlying conduct – here, a series of sexual offenses committed against Plaintiff while he was a minor. (P's Opp. at 14-17.)

Plaintiff's argument, however, fails to account for subsequent developments in Supreme Court jurisprudence. *Tomanio* and *Johnson* stand for the proposition that where there is "no specifically stated or otherwise relevant federal statute of limitations for the federal substantive claim created by Congress . . . , 'the controlling period would ordinarily be the most appropriate one provided by state law'" for each individual federal claim, unless the state statute is inconsistent with federal law. *Tomanio*, 446 U.S. at 485 (quoting *Johnson*, 421 U.S. at 462). But this directive, the Supreme Court later noted, "bred confusion and inconsistency in the lower

---

[3] The parties dispute whether the conduct alleged on Ciccone's part constitutes a sexual offense that falls within the CVA. (*Compare* Ds' Br. at 9-11, *and* Ds' Reply at 8-9, *with* P's Opp. at 2-8.) Because I conclude that the CVA does not extend the statute of limitations for Title IX claims, I need not reach that question.

[4] In *Tomanio*, the plaintiff brought federal claims under 42 U.S.C. § 1983, *see Tomanio*, 446 U.S. at 480 and in *Johnson* the plaintiff brought federal claims under 42 U.S.C. § 1981, *see Johnson*, 421 U.S. at 455.

courts and generated time-consuming litigation," which often left parties with "no idea whether a federal civil rights claim was barred until a court ruled on their case."  *Owens v. Okure*, 488 U.S. 235, 240 (1989).  "Predictability, a primary goal of statutes of limitations, was thereby frustrated."  *Id.*

In *Wilson v. Garcia*, a case brought under 42 U.S.C. § 1983, the Supreme Court addressed the "conflict, confusion, and uncertainty" inherent in *Johnson*'s and *Tomanio*'s case-by-case approach of assessing the state statute of limitations most analogous to each individual federal claim.  *Wilson v. Garcia*, 471 U.S. 261, 266, 275 (1985), *partially superseded by statute as stated in Jones*, 541 U.S. at 377-80.  The Court "expressly rejected the proposition that the limitations period for a § 1983 claim depends on the nature of the underlying right being asserted."  *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 124 (2005) (citing *Wilson*, 471 U.S. at 271-75).  Instead, under *Wilson*, federal courts must "select, in each State, the one most appropriate statute of limitations for all § 1983 claims."  *Wilson*, 471 U.S. at 275.  The Court reasoned that this simpler approach would advance "federal interests in uniformity, certainty, and the minimization of unnecessary litigation," *id.*, and "best fits [section 1983]'s remedial purpose," *id.* at 272.  Applying this rule and concluding that "§ 1983 claims are best characterized as personal injury actions," the Court deemed application of a state's personal injury statute of limitations appropriate for all section 1983 claims.  *Id.* at 280.

Taking the principles discussed in *Wilson* a step further, in *Owens* the Supreme Court held that, given the choice between a state statute of limitations for enumerated intentional torts and a "residual or general personal injury statute of limitations," the court should apply latter.  *Owens*, 488 U.S. at 236.  The *Owens* Court explained that "for years we urged courts to select the state statute of limitations 'most analogous,' and 'most appropriate,' to the particular § 1983

action, so long as the chosen limitations period was consistent with federal law and policy." *Id.* at 239 (first quoting *Tomanio*, 446 U.S. at 488, then quoting *Johnson*, 421 U.S. at 462). *Wilson* had partially addressed the confusion these rules created in lower courts, but "in States with multiple statutes of limitations for personal injury actions," lower courts continued to differ over how to determine which statute applied. *Id.* at 241-42. In addressing whether to apply New York's residual personal injury statute of limitations or the intentional-tort statute of limitations, the *Owens* Court canvassed the numerous different limitations periods that would come into play under the intentional-tort approach. *Id.* at 249-50.[5] Opting to promote consistency and predictability, the *Owens* Court held that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Id.*

While the Supreme Court's case law regarding the federal "borrowing" of state law statute of limitations in civil rights cases developed in section 1981 and 1983 cases, the principles discussed in *Wilson* and *Owens* apply in Title IX cases. *See Curto*, 392 F.3d at 504 (applying the general state statute of limitations for personal injury actions to Title IX claims "accords with our own practice of borrowing the state statute of limitations for personal injury actions for analogous federal discrimination actions brought pursuant to 42 U.S.C. §§ 1981 and 1983"); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015) ("While this court has not yet considered the appropriate limitations period for Title IX claims, every other

---

[5] As Defendants point out, (Ds' Reply at 5), a special statute for child abuse victims was one such example, *see Owens*, 488 U.S. at 244 n.8; *see also Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012) ("[I]n *Owens*, the Court listed special statutes of limitations for child abuse victims as examples where it feared 'confusion over the choice among . . . multiple intentional tort provisions.'") (second alteration in original) (quoting *Owens*, 488 U.S. at 244 & n.8).

11

circuit to have considered the matter in a published opinion has concluded that Title IX is subject to the same limitations period as § 1983.") (citing *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212-13 (10th Cir. 2014); *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006); *Egerdahl*, 72 F.3d at 618).[6] Plaintiff, who relies on *Tomanio* and *Johnson* (in which the plaintiffs brought their claims under section 1983 and section 1981, respectively), does not appear to dispute the applicability of the principles developed in the section 1981 and 1983 context to Title IX. (P's Br. at 15-16.)[7]

Notwithstanding *Wilson*, *Owen*, and *Curto*, Plaintiff argues that "federal law mandates that it is the exception ([the CVA]), not the rule (N.Y. CPLR § 214(5)), that is controlling." (P's Opp. at 20.) But federal law mandates exactly the opposite. *See Abrams*, 544 U.S. at 124-25; (federal courts must "'select, in each State, the one most appropriate statute of limitations for *all* § 1983 claims'") (emphasis in original) (quoting *Wilson*, 471 U.S. at 275); *Owens*, 488 U.S. at 250 ("where state law provides multiple statutes of limitations for personal injury actions, courts . . . should borrow the general or residual statute for personal injury actions"); *Curto*, 392 F.3d at 504 (applying N.Y. C.P.L.R. § 214(5) to a Title IX claim because "Title IX claims are most

---

[6] Title IX does not exclusively address sex offenses committed against children – rather, like § 1983, Title IX "embraces a broad array of actions for injury to personal rights," *Owens*, 488 U.S. at 242, many of which have nothing to do with sexual misconduct. Thus, as in the section 1983 context, there is the risk that a case-by-case inquiry into the proper statute of limitations would lead to inconsistent results that have "less to do with the general nature" of relief under the federal statute in question "than with counsel's artful pleading and ability to persuade the court that the facts and legal theories . . . resemble[] a particular common-law or statutory cause of action." *Id.* at 240.

[7] Similarly, the Supreme Court has applied the rule from *Owens* more broadly and held that federal statutes that protect similar rights are subject to the same general statute of limitations. *See Reed v. United Transp. Union*, 488 U.S. 319, 326 (1989) (general personal injury statute of limitations applies to actions under § 101(a)(2) of the Labor-Management Reporting and Disclosure Act, which, like § 1983, protects exercise of First Amendment rights).

closely analogous to personal injury actions"). Applying the CVA here, in lieu of New York's general personal injury statute of limitations, would force the Court rely on the "nature of the underlying right being asserted" to find the appropriate limitations period – an approach that the Supreme Court has "expressly rejected." *Abrams*, 544 U.S. at 124 (citing *Wilson*, 471 U.S. at 271-275).

This Court's determination that the CVA does not extend the statute of limitations for Title IX claims is consistent with Judge Briccetti's conclusion in *Boyle*:

> Although Section 214-g extends the statute of limitations for state law claims respecting child sexual abuse, it does not extend the statute of limitations for Section 1983 claims. This is because "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Anthes v. New York Univ.*, 2018 WL 1737540, at *10 (S.D.N.Y. Mar. 12, 2018) (quoting *Owens v. Okure*, 488 U.S. at 249-50). As noted above, in New York, the applicable general or residual statute of limitations applicable to plaintiff's Section 1983 claim is three years.

*Boyle*, 2020 WL 2319116, at *3. Plaintiff argues that in *Boyle* Judge Briccetti only addressed the plaintiff's argument about when his section 1983 claim accrued, and that the court did not reach the issue of whether it was required to adopt "*New York's tolling and revival statutes (including N.Y. CPLR § 214-g)*." (P's Opp. at 19-20) (emphasis in original). But, as the above passage makes clear, the *Boyle* opinion is plainly not confined to a discussion of accrual: the court spends several paragraphs addressing essentially the same question raised here – that is, whether the general personal injury statute or the specialized CVA applies to a federal civil rights claim. *See Boyle*, 2020 WL 2319116, at *2-3. Plaintiff's argument that the *Boyle* plaintiff's failure to make the arguments raised by Plaintiff here prevented Judge Briccetti from considering what statute of limitations should apply to the federal claim before him, (P's Opp. at 19-20), is likewise without merit. Which statute of limitations applies is plainly within the scope of what a

13

judge may consider and rule on when the parties raise the issue of whether a claim is timely, and Judge Briccetti plainly addressed the issue.[8]

Plaintiff strains to present the CVA as simple tolling rule that must be applied here by virtue of New York's statutory scheme. (P's Opp. at 15-17.)[9] But the CVA is more than a generally applicable tolling provision: it is a revival statute that creates a unique statute of

---

[8] Plaintiff's attempt to distinguish *Collins v. Dutton*, a Delaware Superior Court decision, is likewise unconvincing. Plaintiff claims, without citation, that the Delaware Child Victims Act currently only waives the limitations period in suits against an alleged abuser. (P's Opp. at 22-23.) As an initial matter, this appears to be incorrect as a statement of Delaware law. *See* 10 Del. C. § 8145; *Collins v. Dutton*, No. S19C-01-045, 2019 WL 6048979, at *4, *6 (Del. Super. Ct. Nov. 14, 2019). Nothing in the language of the statute indicates that only an abuser is subject to suit:

> A cause of action based upon the sexual abuse of a minor by an adult may be filed in the Superior Court of this State at any time following the commission of the act or acts that constituted the sexual abuse. A civil cause of action for sexual abuse of a minor shall be based upon sexual acts that would constitute a criminal offense under the Delaware Code.

10 Del. C. § 8145. Indeed, the *Collins* court explicitly found that "[plaintiff]'s assault and battery claims, if legally sustainable against the [school] board through either *respondeat superior/*vicarious liability, are subject to an unlimited statute of limitations pursuant to the CVA." *Collins*, 2019 WL 6048979, at *6. Moreover, if the plaintiff's Title IX claim were time-barred simply because the Delaware CVA applies only to the abuser and thus would not apply to a claim against the school district, the *Collins* court could simply have noted that and moved on. *Id.* at *3-5. Instead, the court explained that the Delaware CVA could not properly be applied to Title IX claims because "a Title IX claim does not necessarily arise from an incident of sexual harassment/abuse alone," but "such a claim is based on a school district official's actions or inactions." *Id.* at *4. This holding is consistent with federal precedent directing courts to apply "the one most analogous state statute of limitations" to all claims brought under a federal civil rights statute, *Owens*, 488 U.S. at 240 (citing *Wilson*, 471 U.S. at 266), and precedent in this Circuit and elsewhere that the one most analogous statute of limitations for Title IX claims is a state's general or residual personal injury statute of limitations, *e.g.*, *Curto*, 392 F.3d at 504.

[9] *Wilson* directed that the federal court look to state law for "the length of the limitations period, and closely related questions of tolling and application." 471 U.S. at 269; *see Bonneau*, 666 F.3d at 580 (applying residual state statute of limitations and general minor tolling statute, but not special child abuse statute); *Boyle*, 2020 WL 2319116, at *2-3 (to the same effect); *see also Doe v. NYS Off. of Child. & Fam. Servs.*, No. 20-CV-1195, 2021 WL 2826457, at *7-8 (N.D.N.Y. July 7, 2021) (concluding that the CVA created new statutes of limitations, not new tolling provisions, and applying the residual three-year statute of limitations to a § 1983 claim).

14

limitations for a specific subcategory of cases. As applied in this case, the CVA would not "toll" the limitations period for Plaintiff's claim, but would revive a claim for which the limitations period has long since run. Moreover, unlike the generally applicable tolling rule applied in *Twersky* – which tolls the statute of limitations until a claimant reaches the age of majority, *see Twersky*, 579 F. App'x at 9 – the CVA would only apply to Title IX claims with a particular set of facts. That is, application of the CVA would "depend upon the particular facts or the precise legal theory of each claim," *Wilson*, 471 U.S. at 273-74, and would introduce exactly the sort of "chaos and uncertainty" that *Wilson* and *Owens* sought to avoid, *Owens*, 488 U.S. at 243 (citing *Wilson*, 471 U.S. at 275). The parties' briefs here, in which they debate whether the underlying conduct here qualifies as "sexual abuse" covered by the CVA, (*see* Ds' Br. at 9-11, P's Opp. at 2-8; Ds' Reply at 8-9), bear out the wisdom of eschewing a "case-by-case approach" to selecting the appropriate state statute of limitations. *Owens*, 488 U.S. at 240.

In short, because this Court must apply "the one most analogous state statute of limitations" to all Title IX claims, *see Owens*, 488 U.S. at 576, and because the Second Circuit has concluded that N.Y. C.P.L.R. § 214(5) is that one most analogous statute of limitations, *Curto*, 392 F.3d at 504, the statute of limitations for Plaintiff's Title IX is three years.

### 2. Abandoned Accrual and Equitable Tolling Arguments

Plaintiff alleges in the Amended Complaint that, even though the events giving rise to the claims in this case all occurred in 2008 and 2009, his Title IX retaliation claim did not accrue until September 1, 2020, when Plaintiff's current counsel informed him that Schimpf's April 3, 2009 letter had misrepresented Plaintiff's and his parents' legal duty to keep their allegations confidential. (AC ¶¶ 257-269.) Plaintiff alleges that his former attorneys failed to "advise[] Plaintiff and/or his parents that said April 3, 2009 letter contained false misrepresentations about

the extant New York law and federal law pertaining to the imposition of any duties of confidentiality upon Plaintiff and/or his parents." (*Id.* ¶ 265.) As a result, according to the Amended Complaint, until September 2020 Plaintiff "did not know and should [not] have known that his civil rights were violated by [MPCSD's] retaliation against him in violation of Title IX." (*Id.* ¶ 267.) For the same reasons, and in the alternative, the Amended Complaint states that equitable tolling should apply to preserve the Title IX retaliation claims. (*Id.* ¶¶ 270-274.)

Based on these allegations, Defendants argued in support of their motion to dismiss that the standard rule for accrual applies to the Title IX claims (under which the claim accrues as soon as a plaintiff has a cause of action); even if the "discovery rule" exception applies here, Plaintiff would have "discovered" his injury long before September 2020; and Plaintiff failed to meet his burden to show wrongful behavior on the part of Defendants that would have induced him to delay filing such that equitable estoppel applies. (Ds' Br. at 14-17.) Defendants also raised factual issues with Plaintiff's account. (*See* note 10 below.)

Despite having included these allegations in the Amended Complaint, Plaintiff in his opposition brief addressed none of Defendants' responsive arguments. Plaintiff mentions that federal courts must apply federal common law to determine when a claim accrued, but makes this argument in the context of attempting to distinguish *Boyle* and advance his point that the CVA applies to his Title IX claim. (P's Opp. at 17-19.) He states that the default rule is that "a claim generally accrues once the plaintiff has reason to know of the injury which is the basis of the action," (*id.* at 18) (cleaned up), but he does not argue that the discovery rule should apply here nor even mention the theory of delayed accrual. Similarly, his equitable tolling argument is raised in the context of *Boyle*'s holding, but otherwise Plaintiff makes no attempt to address Defendants' argument that the Court should not apply that doctrine. (*Id.* at 19.) Indeed, in

16

Plaintiff's first opposition brief – which the Court struck for exceeding the applicable page limit – he expressly waived both the accrual and equitable estoppel arguments.  (ECF No. 78 at 33 n.5.)  An accompanying affidavit of counsel – never stricken or retracted – likewise states that Plaintiff has withdrawn his "delayed accrual and/or equitable estoppel" arguments.  (ECF No. 76 ¶ 7.)[10]  But even based on the operative brief alone, Plaintiff has abandoned these arguments.

"At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."  *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014); *see, e.g.*, *Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases); *Bonilla v. Smithfield Assocs. LLC*, No. 09-CV-1549, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009).  Plaintiff has completely failed to address Defendants' arguments with regard to delayed accrual and equitable estoppel, and thus the Court deems those arguments abandoned.

Because, as discussed above, the statute of limitations for Plaintiff's Title IX claims is three years, the action was filed well beyond the three-year period, and Plaintiff has abandoned his alternative arguments regarding accrual or equitable tolling of the retaliation claim, Defendants' motion to dismiss counts two and three is GRANTED.

---

[10] Plaintiff withdrew his delayed accrual and equitable tolling arguments after Defendants filed an affidavit from the MPCSD's former counsel in support of their motion to dismiss.  (ECF No. 70-2.)  Attached as exhibits to that affidavit were (1) a Notice of Claim served on the MPCSD by Plaintiff's former counsel on March 25, 2009, noticing claims in connection with the conduct at issue in this lawsuit, (ECF No. 70-3), and (2) an April 23, 2009 letter from Plaintiff's former counsel regarding the notice of claim, in which Plaintiff's former counsel states, with regard to the April 3, 2009 letter from Defendant Schimpf, that he "cannot imagine that one could be in violation of any laws . . . by submitting relevant and necessary information to a court" and stating Plaintiff's intent to go forward with a case against the MPCSD.  (ECF No. 70-4.)

### B. State Law Claims

As Plaintiff acknowledges, his Title IX claims "undergird[] the Court's subject matter jurisdiction for this action."  (P's Opp. at 12.)  Because the Title IX claims are untimely, no federal claims remain.  The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial.  *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that all of the claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, the Court declines to exercise supplemental jurisdiction over any of Plaintiff's remaining state law causes of action.  *See id.* (citing 28 U.S.C. § 1367(c)(3)).  Accordingly, Plaintiff's state law claims are dismissed without prejudice.

### C. Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "Amendment is futile when the problem with a plaintiff's causes of action is substantive and better pleading will not cure it."  *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y. 2019) (cleaned up).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up).

Plaintiff cross-moved for leave to amend his complaint should the Court determine that the conduct alleged does not fall within the CVA, (P's Opp. at 28), but the Court disposed of Plaintiff's Title IX claims without reaching that issue, (*see* note 3 above). Accordingly, such an amendment of the Title IX claims would be futile, and Plaintiff's cross-motion to amend is DENIED. The Court likewise declines to grant leave to amend in any other respect *sua sponte*, because the statute-of-limitations bar to the Title IX claims is substantive and cannot be rectified with better pleading.

*   *   *

The allegations in this case are disturbing, and the Court understands why Plaintiff might wish to pursue them now, even if he did not when he was younger. But the law does not provide a federal forum in which to do so.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff's Title IX claims are dismissed with prejudice, and Plaintiff's state law claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motions, (ECF Nos. 68, 71), and close the case.

**SO ORDERED.**

Dated: November 3, 2021
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.